# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| ARYEE HENDERSON, | ) | Civil Action No.: 4:16-cv-0947-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| DR. LILLY RANDOLPH, MEDICAL | ) | |
| PHYSICIAN; SGT. SMALDONE, | ) | |
| PRISON GUARD; MS. SCARBOROUGH, | ) | |
| FOOD SERVICE SUPERVISOR; MS. | ) | |
| RICHBURG, FOOD SERVICE | ) | |
| SUPERVISOR; MS. JANICE, FOOD | ) | |
| SERVICE SUPERVISOR; MS. KINARD, | ) | |
| FOOD SERVICE SUPERVISOR; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights with respect to his conditions of confinement and his medical needs.  Presently before the court are Defendant Sgt. Smaldone's Motion for Summary Judgment (Document # 114) and Defendant Dr. Randolph's Motion for Summary Judgment (Document # 115).  Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions for summary judgment could result in the motions being granted, resulting in dismissal of his claims.  Plaintiff filed his Responses (Documents # 131, 132) after being granted an extension of time.  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This report and recommendation is entered for review by the district judge.

## II.    FACTS[1]

Plaintiff alleges that Sgt. Smaldone "forced me to endure living in squalid, depraved living conditions while on SHU." Am. Compl. p. 7 of 27. He later alleges that Sgt. Smaldone "is the supervisor over SHU and he allowed me to be subjected to inhumane living conditions while in SHU. He keeps the industrial fan on ally day and all night. The air conditioner is blowing wide open 365 days a year. There was no running hot water in cell # 46, in which I was placed on Administrative Hold." Am. Compl. p. 11 of 27. As a result of these living conditions, Plaintiff alleges that he suffered from "constant runny nose, depression, anxiety, severe dry skin, restlessness, lack of energy, emotional distress, humiliation, and metal anguish." Am. Compl. p. 14 of 27.

Plaintiff alleges that Dr. Randolph "has been denying me medical treatment for excessive dry skin and severe rash outbreaks on my upper chest, neck, face, and forehead." Am. Compl. p. 7 of 27. He alleges that he never received any diagnosis or medical treatment for these ailments or symptoms. Am. Compl. p. 14 of 27. As a result of this alleged denial of medical treatment, Plaintiff alleges that he suffered from "a severe rash outbreak on my upper chest, neck, face, forehead, and behind my ears, itching, discoloration, of skin tone, skin peeling, anxiety, despair, lack of sleep, and mental anguish." Am. Compl. p. 14 of 27.

Plaintiff alleges that he filed grievances with respect to "denial of legal documents, denial of medical treatment, denial of mental health treatment, food, shelter, [and] loss of property," but they were never processed so he could not appeal them. Am. Compl. pp. 15-16 of 27. In his response to Dr. Randolph's motion, Plaintiff asserts that he filed a grievance on denial of medical

---

[1]Plaintiff originally filed this action against numerous Defendants, alleging various unrelated claims against each one. Many defendants were summarily dismissed prior to service For sake of clarity, the undersigned includes only those facts relevant to Sgt. Smaldone and Dr. Randolph.

treatment on November 16, 2015, by placing it in Corrections Officer Brown's hand during breakfast. He asserts that he never received a response. In his response to Sgt. Smaldone's motion, Plaintiff asserts that he filed grievances pertaining to, among other matters, medical and shelter, on November 16, 2015, and December 21, 2015, by placing them into Correctional Officer Brown's and Detention Hearing Officer Sterling's hands. He asserts that he never received a response back and, as a result, it would be futile for him to continue filing grievances.[2]

Lt. Kenneth Sligh, is a Lieutenant assigned to the Alvin S. Glenn Detention Center (ASGDC), where Plaintiff was housed at all times relevant to his complaint. Sligh Aff. ¶ 1 (Ex. to Sgt. Smaldone Motion). He avers that the only grievance filed by the Plaintiff during his time at the Detention Center dealt with his "legal papers" and was filed while he was being housed in the Foxtrot housing unit, not the SHU. Sligh Aff. ¶ 16 and Ex. B. However, Plaintiff was given his "legal papers" and, therefore, did not initiate the appeal process with regard to this grievance. Sligh Aff. ¶ 17. In response to Dr. Randolph's interrogatories seeking "a complete listing of all administrative remedies you have pursued concerning the allegations set forth in your Complaint," Plaintiff listed one grievance filed November 16, 2015. Discovery Responses (Ex. 4 to Dr. Randolph Motion.). The one grievance referenced and provided by Lt. Sligh is not dated by Plaintiff, but the staff response to the grievance is dated November 20, 2015. Sligh Aff. Ex. B.

## III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v.

---

[2]Plaintiff's representations in his responses regarding his grievances are not in the form of a sworn statement or declaration.

Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Id. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399, 400 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) (noting that inmate's failure to exhaust

administrative remedies is an affirmative defense to be both pled and proven by the defendant).

Defendants present the affidavit testimony of Lt. Kenneth Sligh, a Lieutenant assigned to the Alvin S. Glenn Detention Center (ASGDC), where Plaintiff was housed at all times relevant to his complaint. Sligh Aff. ¶ 1 (Ex. to Sgt. Smaldone Motion). He avers that the only grievance filed by the Plaintiff during his time at the Detention Center dealt with his "legal papers" and was filed while he was being housed in the Foxtrot housing unit, not the SHU. Sligh Aff. ¶ 16 and Ex. B. However, Plaintiff was given his "legal papers" and, therefore, did not initiate the appeal process with regard to this grievance. Sligh Aff. ¶ 17. In response to Dr. Randolph's interrogatories seeking "a complete listing of all administrative remedies you have pursued concerning the allegations set forth in your Complaint," Plaintiff listed one grievance filed November 16, 2015. Discovery Responses (Ex. 4 to Dr. Randolph Motion.). The one grievance referenced and provided by Lt. Sligh is not dated by Plaintiff, but the staff response to the grievance is dated November 20, 2015. Sligh Aff. Ex. B. Thus, given that Plaintiff provided information for only one grievance in his discovery responses, and the detention center has a record of only one grievance filed by Plaintiff, the reasonable inference is that the grievances referenced by Plaintiff and by Lt. Sligh are one in the same. In addition, Mike Smith, the Facility Manager at ASGDC, avers that he is "tasked with responding to inmate grievances with regard to the facilities at the detention center" and he has no record of and does not recall Plaintiff ever filing any grievance regarding his living conditions. Smith Aff. ¶¶ 1, 19-20 (Ex. to Sgt. Smaldone Motion).[3]

As set forth above, Plaintiff alleges in his complaint that he filed grievances regarding

---

[3]Janet Renner, the Food Service Director at ASGDC, avers that she is responsible for responding to inmate grievances regarding the food served, and she has no record of and does not recall Plaintiff ever filing a grievance regarding food. Renner Aff. ¶¶ 1, 14 (Ex. to Sgt. Smaldone Motion).

"medical" and "shelter" but they were not processed.  In his responses to Defendants' motions, he argues that he filed grievances but never received responses and, "since ASGDC administrative officials refused to respond to my initial grievances, it would be futile for me to continue filing grievances."  Pl. Resp. p. 9 of 25 (Document # 132).  When pursuing administrative remedies, the PLRA only requires that inmates exhaust "available" remedies.  42 U.S.C. § 1997e(a).  Under the PLRA, "available" means "capable of use to obtain some relief for the action complained of."  Ross v. Blake, ___ U.S. ____, ____, 136 S. Ct. 1850, 1859 (2016) (internal quotation marks omitted). "The burden of showing that administrative remedies were unavailable lies with the plaintiff."  Mann v. Scott, Civ. Action No. 0:14-3474, 2015 WL 5165198, at *2 (D.S.C. Sept. 1, 2015) (citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.")).

In his response to Dr. Randolph's motion, Plaintiff asserts that he filed a grievance on denial of medical treatment on November 16, 2015, by placing it in Corrections Officer Brown's hand during breakfast.  He asserts that he never received a response.  In his response to Sgt. Smaldone's motion, Plaintiff asserts that he filed grievances pertaining to, among other matters, medical and shelter, on November 16, 2015, and on December 21, 2015[4], by placing them into Correctional Officer Brown's and Detention Hearing Officer Sterling's hands.  He asserts that he never received

---

[4]This assertion of a second grievance filed on December 21, 2015, is contrary to Plaintiff's own representation in his discovery responses that he filed only one grievance on November 16, 2015.  Plaintiff's discovery response, which was provided by Plaintiff before his responses to the motions for summary judgments were filed, is more in line with the other evidence of record. See, e.g. Alba v. Merrill Lynch & Co., 198 Fed. Appx. 288, 300 (4th Cir.2006) ("It is well recognized that a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony."); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

a response and, as a result, it would be futile for him to continue filing grievances. Plaintiff argues that security camera footage would reveal that he submitted the grievances, but Defendants refused to provide him with the footage. While such footage could indicate that Plaintiff handed a document or documents to one of these individuals, it would not reveal the contents of the grievances and whether he grieved the concerns at issue here. As discussed above, it is undisputed that Plaintiff filed an unrelated grievance sometime around November 16, 2015, so any such footage would provide little more information than we already know. Rather, the record reflects that Plaintiff filed only one grievance while at ASGDC, as acknowledged by Plaintiff in his discovery responses, which addressed his legal mail and did not mention his medical treatment or his conditions of confinement. Plaintiff fails to present sufficient evidence to show that Defendants prevented him from following the grievance process or otherwise made that process unavailable to him.

Plaintiff's self-serving statement in his verified complaint and his unsworn statements in his responses to the motions for summary judgment are insufficient to avoid summary judgment in light of the contrary evidence provided to this court. Poe v. Bryant, C/A No. 9:12–3142–RMG, 2013 WL 6158023, at *2 (D.S.C. Nov. 21, 2013) (citing Malik v. Sligh, No. 5:11–1064–RBH, 2012 WL 3834850, at *5 (D.S.C. Sept. 4, 2012), aff'd, 507 F. App'x 294 (4th Cir.2013) (finding that a self-serving affidavit from the plaintiff was "simply not enough to create a genuine dispute as to any material fact" in light of the other evidence that disputed the credibility of plaintiffs self-serving claims); see also Pearson v. Stevenson, C/A No. 9:14–454–RBH, 2015 WL 733814, *2 (D.S.C. Feb. 20, 2015) (finding that "Plaintiff may not escape summary judgment by simply asserting that 'yes I did' exhaust administrative remedies"). The evidence in the record reveals that Plaintiff failed to exhaust his administrative remedies. As such, summary judgment is appropriate.

In addition, Plaintiff fails to present sufficient evidence to create an issue of fact at to the

merits of his claims.  Plaintiff asserts that Sgt. Smaldone, as supervisor of the SHU, violated his constitutional rights as a pre-trial detainee by keeping "the industrial fan on all day and night" and the air conditioner "blowing wide open 365 days a year" and provided no hot, running water in his cell.  Am. Compl. pp. 11 of 27.  However, § 1983 does not provide for supervisory liability and "in order to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (citing Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotations omitted). "The doctrine of respondeat superior has no application under this section." Id.  Further, Plaintiff's complaints fail to give rise to a constitutional violation.  See, e.g., Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (noting no constitutional violation for low cell temperature where blankets were issued); Ellis v. Pierce City, GA, 415 Fed.Appx. 215, 218 (11th Cir. 2011) (holding that a pretrial detainee's lack of access to hot water in his cell "fell far short of the sort of 'extreme deprivations' that amount to clearly established unconstitutional conditions.") (quoting Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004)).

As to Dr. Randolph, Plaintiff alleges that she failed to provide any treatment for his dry skin and rash. Am. Compl. p. 7 of 27.  He alleges that he never received any diagnosis or medical treatment for these ailments or symptoms.  Am. Compl. p. 14 of 27.  However, in his response he concedes that he did receive treatment but he was not satisfied with the treatment provided.  Pl. Resp. (Document # 132 ) p. 9 of 25.  An inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury will not constitute a sufficient basis for a constitutional claim.  Wright, 766 F.2d at 849.  Therefore, summary judgment is appropriate on the merits of Plaintiff's claims as well.

## IV.    CONCLUSION

For the reasons discussed above, it is recommended that Defendant Sgt. Smaldone's Motion for Summary Judgment (Document # 114) be granted and Defendant Dr. Randolph's Motion for Summary Judgment (Document # 115) be granted and this case be dismissed in its entirety.

         s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 31, 2017
Florence, South Carolina

**The parties are directed to the important information on the following page.**